## DEMPSEY v. MERRITT, CHAPMAN & SCOTT CORPORATION et al.

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

No. 134.

1. **Shipping** ⬡⟳58(2)—Evidence held not to show that loading of marble by subcharterer on extreme stern of barge did not injure it.

Evidence *held* not to show that loading of marble on extreme stern of barge, by one acting under order of subcharterer, did not cause injury to barge by straining.

2. **Appeal and error** ⬡⟳1011(1).

Circuit Court of Appeals will not re-examine finding of District Court on a controverted question of fact.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel in personam in admiralty by Mary A. Dempsey against the Merritt, Chapman & Scott Corporation and others. Decree for libelant, and the named defendant appeals. Affirmed.

The libel was filed by the owner of the barge Mary A. Dempsey to recover for damages done during the loading of the barge on June 12, 1923, at the Bush Docks in Brooklyn. The owner had chartered the barge to the Atlantic Lighterage Corporation, from whom she passed by a number of subcharters to the American Baltic Chartering & Shipping Company. The appellant, Merritt, Chapman & Scott Corporation, received an order from the last subcharterer to discharge 130 blocks of marble from a steamer, and received for this purpose two barges, of which the Dempsey was one. On June 12th the appellant loaded 32 blocks of marble upon the Dempsey, weighing in all about 262 tons. It was for the damage alleged to have been done by the stowage of this cargo that the libelant sued.

The American Lighterage Company brought in its subcharterer, who in turn brought in the next subcharterer, and so on until all had been made parties. As the District Court held that the loading was negligently done by the appellant, it became unnecessary to determine the liability of any of the subcharterers.

The facts disclosed upon the hearing were as follows:

The barge was 16 years old, and had been in constant service about the harbor of New York. In February, 1923, she had been overhauled, and some $1,500 of repairs had been put upon her. While these repairs had been made necessary by a collision, they included a general overhauling. Three years before, she had also been repaired at an expense of $3,400. The bargee in charge of her testified that she did not leak and was in general good condition, and the surveyor who had examined her six months before testified that she was then also staunch and able.

The loading was done under the supervision of an employee of the appellant, one Applegate, who put the first block of marble, weighing about 7½ tons, on the port after corner. The next piece was put close beside and amidships, and the third on the starboard after corner. Thereafter the barge was stowed forward until she was in trim. The injury was alleged to have occurred by the straining when the bow was raised by these first three blocks, perhaps by the first alone. Applegate said that, before loading, he consulted the bargee, who told him to stow as he did, and that in any event this was the proper way to stow marble. The bargee swore that he protested after the first block was loaded, and said it should have been put amidships. The District Court accepted the testimony of the bargee, held that the first blocks should have been set amidships, and that the damage had resulted from the failure to follow the bargee's directions.

The cargo lay on board for a day, but the barge began to leak almost at once. After her discharge she was used for another cargo of marble, and two or three weeks later lifted about 600 tons of brick. She was surveyed in July, and found to have been badly strained in her seams; several knees and beams were broken, and one kelson, nearly all in the after part of the craft. All these breaks were new. The recovery was for the cost of repairing this damage.

Henry M. Hewitt, of New York City, for appellant.

Macklin, Brown & Van Wyck, of New York City (Paul Speer, of New York City, of counsel), for appellee.

Joseph K. Inness, of New York City, for American Baltic Chartering & Shipping Co.

Foley & Martin, of New York City, for Atlantic Lighterage Co. and Federal Lighterage Co.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] It seems to us that Judge Campbell was right in saying that the barge was staunch when the lading began. At least, we cannot find anything in the record which should permit us to reverse his finding. Again, the immediate appearance of water in her hold seems to make reasonable the inference that she had been strained at the time. The cargo was not a heavy one for her to lift, and something uncommon must have happened. The weight, if not of one block, at least of three, on her extreme stern, must have lifted her bow well out of water and subjected her frame to strains for which she was not built. We cannot say that it was not a sufficient cause for the injuries disclosed at the survey. The breakage of the knees might have been caused at the same time. The whole craft was being used in a measure as a lever about some line in her frame as a fulcrum. Where she would give under such circumstances appears to us mere matter of speculation. It is enough that the knees were not being subjected to that vertical strain for which they were designed when the vessel was in trim. The twist, coupled with the weight of the blocks, might well have caused them to give, though they were strong and well set. It is quite true that the load of brick which she later lifted may have aggravated the original damage; but the appellant has not put us in a position to say that this must have been so, or, if it were, to apportion how much was due to this and how much to the original straining. It is, indeed, only fair to remember that this it probably could not do; but, while that is no doubt a misfortune, if later damage in fact occurred, in such cases we cannot be sharp to limit the recovery in the interest of a wrongdoer once shown at fault.

As to the fault itself, it may well be, as the appellant argues, that, expert against expert, the bargee cannot stand against Applegate, whose experience was much wider. That is irrelevant, as we see the case. The result of Applegate's experience, his supposed expertness in the stowage of marble, led him on his own showing "invariably" to consult the bargee before loading their barges. This we cannot see as other than a recognition that each barge had her individual structure and weakness which it was prudent to learn before lading. That uniform custom he does not suggest to have been merely a formality against the possibility of subsequent disputes.

[2] It is quite true that he says that in this instance he did consult the bargee and took his direction. Whether he should be believed, or the bargee, who contradicted him, we do not know; it is quite enough that Judge Campbell, who saw them both, chose to believe the bargee. We have said over and over that we will not re-examine such a finding. So the case stands that Applegate in this instance omitted a precaution, which he recognized as proper in all cases. How he can escape fault, if that be true, we cannot see. That the injury followed from his omission seems almost certain. The bargee would have told him to begin amidships; indeed, he protested after the first block was laden. If it was this method which damaged the barge, it would not have been damaged had Applegate done what he should.

The case involves only questions of fact, upon which the decision of the District Court should be final.

Decree affirmed.